## THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CR-22-355-SLP |
| ) | |
| DARLA BRALLEY, ) | |
| ) | |
| Defendant. ) | |

### O R D E R

Before the Court is Defendant's pro se "Motion for Sentence Reduction Under Advisory of Compassionate Release, the First Step Act, and USSC Promulgated Amendment Modifications, Pursuant to USC 3582(c)(1)(A) and (c)(2) of Title 18." [Doc. No. 20]. As previously noted, the Court construes the Motion as seeking, at least in part, relief pursuant to 28 U.S.C. § 2255.[1]

### I. Alleged Failure to Appeal

As is relevant here, Defendant contends her trial counsel, Irvin Box, provided constitutionally ineffective assistance. She claims she "instructed Mr. Box to file a Direct Appeal based on her noted unreasonable award in punishment (24-months)," but he failed to do so. [Doc. No. 20] at 15; *see also id.* at 31–32 (asserting Mr. Box "did not file for direct appeal when instructed to do so by his client who followed the government's

---

[1] Defendant's original Motion was not signed or verified, but the Court granted her leave to cure this defect. See [Doc. No. 27]. Defendant timely complied with the Court's directive. See [Docs. No. 28, 28-1].

statement of fact that she could appeal her unreasonable sentence"). The Government's Response [Doc. No. 23] does not address this argument.[2]

To successfully establish a claim of ineffective assistance of counsel, a defendant must show that "(1) [her] 'counsel's performance was deficient,' and (2) 'the deficient performance prejudiced the defense.'" *United States v. Deiter*, 890 F.3d 1203, 1209 (10th Cir. 2018) (quoting *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). Although this familiar two-prong analysis applies when a defendant alleges "counsel was constitutionally ineffective for failing to file a notice of appeal," *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000), "a lawyer who disregards specific instructions to perfect a criminal appeal acts in a manner that is both professionally unreasonable and presumptively prejudicial," *United States v. Snitz*, 342 F.3d 1154, 1155–56 (10th Cir. 2003). In such cases, a defendant is entitled to a delayed appeal "regardless of whether, from the limited perspective of collateral review, it appears that the appeal will not have any merit." *United States v. Garrett*, 402 F.3d 1262, 1267 (10th Cir. 2005).

Based on the sworn allegations from Defendant and the lack of response from the Government,[3] the record before the Court does not "conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). Accordingly, the Court must "conduct further

---

[2] Necessarily, then, the Government has not moved to enforce the collateral attack waiver contained in Defendant's plea agreement. *Compare United States v. Viera*, 674 F.3d 1214, 1218 (10th Cir. 2012) (finding nearly identical claim subject to plea agreement where government moved to enforce collateral attack waiver), *with United States v. Garrett*, 402 F.3d 1262, 1266 (10th Cir. 2005) (remanding for further proceedings to determine whether defendant "actually asked counsel to perfect an appeal" where government did not move to enforce collateral attack waiver).

[3] The Government's Response did not include an affidavit from Mr. Box.

2

proceedings to resolve the factual issue of whether [Defendant] had requested h[er] attorney to file a notice of appeal." *United States v. Garrett*, 402 F.3d 1262, 1263 (10th Cir. 2005); *see also United States v. Lee-Speight*, 529 F. App'x 903, 907 (10th Cir. 2013) (remanding for district court to "further develop the factual record" on claim that attorney ignored defendant's request to file an appeal).

The Court therefore ORDERS the Government to, within 7 days of the date of this Order, supplement the record with a verified statement from Defendant's trial counsel, pursuant to Rule 7(a) Rules Governing § 2255 Proceedings in the United States District Courts. *See Lee-Speight*, 529 F. App'x at 907 n.5 ("[T]he district court retains flexibility to utilize alternative methods to expand the record without conducting an extensive hearing." (quotation omitted)).

Alternatively, the Government may notify the Court, within 7 days of the date of this Order, if it does not intend to provide verified evidence to rebut Defendant's sworn factual allegations. In that case, the Court will conclude that Defendant's sworn allegations are sufficient to trigger a belated appeal.[4]

---

[4] If the Court determines that Defendant is entitled to a delayed appeal, the scope of that appeal will not be limited by the issues raised in her pro se Motion. *See Snitz*, 342 F.3d at 1159. Accordingly, the Court reserves ruling on the remaining § 2255 allegations pending the resolution of the failure-to-appeal claim.

## II. **Request for Sentence Reduction**

Defendant's Motion also contains a request for a reduction in her sentence pursuant to 18 U.S.C. § 3582(c)(2) based on Amendment 821 to the federal sentencing guidelines. As explained below, the Court lacks jurisdiction to grant the requested reduction.

### a. *Background*

Prior to her arrest, Defendant worked as the payroll administrator for St. Paul the Apostle Catholic Church. From 2014 until 2020, Defendant used church funds to pay for her personal expenses by issuing checks and making fraudulent online transfers from the church's checking account. All told, the fraudulent checks and transfers totaled $451,177.54. *See* Final Presentence Investigation Report ("PSR") [Doc. No. 15] ¶ 15.

On September 29, 2022, Defendant pled guilty to one count of wire fraud, in violation of 18 U.S.C. § 1343 (Count 1), and one count of making false statements in a tax return, in violation of 26 U.S.C. § 7202(1) (Count 2), pursuant to a plea agreement with the Government. *See* [Docs. No. 1, 6–8]. On October 17, 2023, the Court sentenced Defendant to 24 months' imprisonment. [Docs. No. 17, 18].

On August 18, 2023, the United States Probation Office filed its PSR [Doc. No. 15]. As to Count 1, the PSR calculated a base offense level of seven, plus (1) a twelve-level increase because the loss involved was between $250,000 and $550,000, and (2) a two-level increase because Defendant abused a position of private trust in a manner that significantly facilitated the commission or concealment of the offense. *Id*. ¶¶ 23–24, 26. The PSR calculated and an adjusted offense level of 21 for Count 1. *Id*. ¶ 28.

As to Count 2, the PSR calculated a base offense level of fourteen, plus a two-level increase because Defendant failed to report or correctly identify the source of income exceeding $10,000 from criminal activity. *Id.* ¶¶ 29–30. The PSR calculated and an adjusted offense level of 16 for Count 2. *Id.* ¶ 16. After grouping the counts and applying a three-level reduction for acceptance of responsibility, the PSR calculated a total offense level of 19. *Id.* ¶¶ 34–38, 40–42.

The PSR calculated a total criminal history score of zero. *Id.* ¶ 46. Defendant did not receive any status points for committing the offense while under a criminal justice sentence. Defendant's criminal history score placed her in a criminal history category of I. *Id.* Combining Defendant's total offense level of 19 and criminal history category of I, the PSR recommended a sentence of 30 to 37 months' imprisonment. *Id.* ¶ 85.

On October 17, 2023, the Court adopted the PSR with one change and sentenced Defendant to 24 months' imprisonment.[5] [Docs. No. 17, 18]. The Court varied downward "[c]onsidering the defendant's lack of prior criminal history, along with the upcoming proposed guideline amendment for zero-point offenders (§4C1.1), as well as the defendant's early plea." [Doc. No. 19] at 4.

### b. Legal Standard

"A district court does not have inherent authority to modify a previously imposed sentence; it may do so only pursuant to statutory authorization." *United States v. Mendoza*,

---

[5] The change, which was to paragraph 16 of the PSR, is not relevant to the application of Amendment 821.

118 F.3d 707, 709 (10th Cir. 1997). One source of statutory authorization is section 3582 which allows for a possible reduction for a defendant "who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission." 18 U.S.C. § 3582(c)(2).[6]

Section 3582(c)(2) "establishes a two-step inquiry." *Dillon v. United States*, 560 U.S. 817, 826 (2010). "At step one, § 3582(c)(2) requires the court to follow the Commission's instructions in [U.S.S.G.] § 1B1.10 to determine the prisoner's eligibility for a sentence modification and the extent of the reduction authorized." *Id*. at 827. "At step two of the inquiry, § 3582(c)(2) instructs a court to consider any applicable § 3553(a) factors and determine whether, in its discretion, the reduction authorized by reference to the policies relevant at step one is warranted in whole or in part under the particular circumstances of the case." *Id*.

Here, Defendant seeks a sentence reduction pursuant to Amendment 821 to the U.S.S.G. which took effect on November 1, 2023, and applies retroactively. Part A of Amendment 821 limits the criminal history impact of "status points," and Subpart 1 of Part B of Amendment 821 creates a new guideline, § 4C1.1, that provides for a decrease of two

---

[6] Portions of Defendant's Motion also suggest she intends to seek compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). *See, e.g.*, [Doc. No. 20] at 1–2, 4. In Reply, however, Defendant clarifies her "motion is not a requisition for compassionate release and it was never intended to be one." [Doc. No. 25] at 13. Thus, it is unnecessary for the Court to consider these portions of her Motion. In any event, Defendant has not shown entitlement to relief under § 3582(c)(1)(A). As the Government points out, a Defendant may only file a motion for compassionate relief after she "has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on [her] behalf or the lapse of 30 days from the receipt of such a request by the warden of the [her] facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A); *see also United States v. Hemmelgarn*, 15 F.4th 1027, 1030 (10th Cir. 2021). Because Defendant has not attempted to make such a showing here, any request under § 3582(c)(1)(A) would be subject to dismissal.

offense levels for "Zero-Point Offenders." *See* U.S. Sent'g Guidelines Manual app. C Supp., amend. 821 (U.S. Sent'g Comm'n 2023). With respect to the guideline for zero-point offenders, a defendant is eligible for a two-level reduction in the offense level if he or she meets all ten of the listed criteria.[7]

### c. *Analysis*

Defendant is technically eligible for relief under Part B of Amendment 821 because she is a zero-point offender. After application of the Amendment, her guideline range is 24–30 months' imprisonment. At sentencing, however, the Court considered the impact of

---

[7] Those ten criteria are:

> (1) the defendant did not receive any criminal history points from Chapter Four, Part A;
> (2) the defendant did not receive an adjustment under § 3A1.4 (Terrorism);
> (3) the defendant did not use violence or credible threats of violence in connection with the offense;
> (4) the offense did not result in death or serious bodily injury;
> (5) the instant offense of conviction is not a sex offense;
> (6) the defendant did not personally cause substantial financial hardship;
> (7) the defendant did not possess, receive, purchase, transport, transfer, sell, or otherwise dispose of a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;
> (8) the instant offense of conviction is not covered by § 2H1.1 (Offenses Involving Individual Rights);
> (9) the defendant did not receive an adjustment under § 3A1.1 (Hate Crime Motivation or Vulnerable Victim) or § 3A1.5 (Serious Human Rights Offense); and
> (10) the defendant did not receive an adjustment under § 3B1.1 (Aggravating Role) and was not engaged in a continuing criminal enterprise, as defined in 21 U.S.C. § 848 . . . .

U.S.S.G. § 4C1.1(a).

Amendment 821, which had not yet taken effect, and sentenced Defendant to 24 months' imprisonment. *See* [Doc. No. 19] at 4.

Defendant now asks the Court to reduce her sentence by six months, which would result in a term of imprisonment of 18 months. *See* [Doc. No. 20] at 20. But Defendant's sentence is already at the bottom of the amended guideline range. The Court cannot reduce Defendant's sentence "to a term that is less than the minimum of the amended guideline range" absent narrow circumstances that are not present here.[8] U.S.S.G. § 1B1.10(b)(2)(A). Because the Court lacks statutory authority to reduce Defendant's sentence, her request for a reduction pursuant to Amendment 821 is DISMISSED. *See United States v. Bowman*, 645 F. App'x 774, 777 (10th Cir. 2016). The Court will enter final judgment once it resolves the remaining § 2255 claims in the Motion.

IT IS SO ORDERED this 28th day of January, 2025.

SCOTT L. PALK
UNITED STATES DISTRICT JUDGE

---

[8] In any event, Defendant has received the benefit of the reduction because the Court took Amendment 821 into account at the time it imposed Defendant's sentence.